UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOMENTO, INC., a California Corporation, | ) NO. C 09-1223 SBA |
| Plaintiff, | ) |
| vs. | ) **ORDER DENYING DEFENDANTS'** |
| | ) **MOTION TO DISMISS PLAINTIFF'S** |
| SECCION AMARILLA USA, a California | ) **THIRD, FOURTH, AND FIFTH CLAIMS** |
| Limited Liability Corporation, CORY SUAZO, an | ) **FOR RELIEF** |
| individual, RAFAEL BERRIOS, an individual, | ) |
| and Does 1-50 inclusive, | ) |
| Defendants. | ) |

## A.  STANDARDS FOR 12(b)(6) MOTIONS

Federal Rules of Civil Procedure 8(a) provides that a complaint shall contain a "short and plain statement" of the pleader's _claim showing_ that the pleader is entitled to relief.  Motions to dismiss are disfavored, as there exists "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev Corp.* 108 F.3d 246, 249 (9th Cir. 1997).

There is no special pleading rule requiring greater factual specificity in antitrust cases. *McLain v. Real Estate Bd.,* 444 U.S. 232, 246 (1980); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F. 2d 919, 924 (9th Cir. 1980); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F. 2d 1076, 1082 (9th Cir. 1976), cert denied, 430 U.S. 940 (1977); *Walker Distributing Co. v. Lucky Lager Brewing Co.,* 323 F. 2d 1, 3 (9th Cir. 1963).  Moreover, motions to dismiss "are particularly disfavored in fact-intensive antitrust cases." *Covad Communications Co. v. BellSouth Corp.*, 299 F3d 1272, 1279 (11th Cir. 2002).

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F2d 696, 699 (9th Cir. 1990).  Further, a suit should not be dismissed ***if it "is possible to***

*hypothesize facts, consistent with the complaint*, that would make out a claim.' *Hearn v. R.J. Reynolds Tobacco Co.,* 279 F. Supp.2d 1096, 1101 (D AZ 2003).

When deciding on a 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept well-plead factual allegations as true, and (3) determine whether plaintiff can prove these claims to merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F3d 336, 337-338 (9th Cir. 1996). Further, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the fact finder." *Id.* at 563 n.8.

### B. MOMENTO HAS MET ITS PLEADING BURDEN FOR A CLAIM FOR BELOW COST PRICING BASED UPON CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17043 AND 17200

The Court must adhere to state court decisions on substantive law when deciding state claims. *Erie R. Co. v. Tompkins, 304 U.S. 64* (1938); *King v. Order of United Commercial Travelers,* 333 U.S. 153 (1948). The same principle should be applied in both diversity cases and cases of supplemental jurisdiction "for the same reasons, viz., the underlying substantive rule involved is based on state law and the State's highest court is the best authority on it own law." *C.I.R. v. Bosch's Estate,* 387 U.S. 456 (1967).

Section 17043 provides: "It is unlawful for any person engaged in business with this State to sell any article or product at less than the cost thereof to such vendor, or to give away an article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competition or destroying competition." Cal. Bus. & Prof. Code §17043. Therefore the elements of the claim are : 1) an article or product is sold 2) at less that than the cost to the seller 3) for

the purpose for injuring competitor or destroying competition.   *Dooley v. Crab Boat Owners Ass'n* 271 F.Supp. 2d 1207, 1215 (N.D. Cal. 2003).

Momento has alleged that SAUSA has sold the advertising in the SAUSA directory (product) at less than the cost to the seller. [FAC ¶ 68 &69]  For purposes of §17043 cost is defined as a "fully allocated cost" or "fully distributed cost."  *Turnbull & Turnbull v. ARA Trnsp. Inc*., 219 Cal App. 3d. 811, 819-820 (1990).  Further, the concept of fully allocated cost has been equated with average total cost, which "reflects that portion of the firm's total costs - both fixed and variable - attributable on an average basis to each unit of output." *William Inglis*, supra, 668 F.2d at p. 1035, fn. 30, 1048.

Here, Momento alleges pricing and sales below a specifically quantified average total cost estimate ($1275.00 per page) based upon (a) Plaintiff's experience in the same business, (b) Defendant SAUSA's admitted costs, and (c) Defendant SAUSA's admitted revenues, should be noted. [FAC ¶ 67] This is not mere conclusory recitation of the statutory elements of the below cost pricing offense, but rather adherence to suggestions for cost determination set forth in the California Unfair Practices Act, and the relevant case law.  *See*, *G.H.I.I v. MTS, Inc.,* 147 Cal. App. 3d 256, 276 (1938) re pleading sufficiency of cost figure based on plaintiff's own experience.  Moreover, in *Independent Journal Newspapers v. United Western Newspapers, Inc.*, the court held that plaintiff could have properly alleged a cost figure for newspaper advertising space based on its own cost experience selling advertisements. 15 Cal.App.3d at 587 (1971).

In *G.H.I.I. v. MTS, Inc*.,147 Cal. App. 3d 256.  In *G.H.I.I.*, the California court of appeals reversed the sustaining of a demurrer as to allegations of below cost pricing under Cal. Bus. & Prof. Code § 17043, even where the complaint, as described by the Court, "fails to allege a definite cost of doing business-merely asserting on information and belief, cased upon appellant's experience, that the prices charged for records and tapes were 'below' respondents stated invoice costs plus the unstated cost of doing business."  In finding the allegations so described "sufficient under section 17043" the *G.H.I.I.* court reasoned "…it would serve no useful purpose to require a speculative allegation of cost which adds nothing to the notice given by the pleadings in the present state.  *G.H.I.I.* supra, 147 Cal. App. 3d at 276.

For purposes of this 12(b)(6) analysis, the California Unfair Practices Act expressly makes proof of one or more acts of selling below cost, together with proof "of the injurious effect of such acts" presumptive evidence of the purpose or intent to injure competitors or destroy competition. Cal. Bus. & Prof. Code §17071.  Here, Plaintiff has clearly alleged Defendants intent to injure and the injurious effect (FAC ¶ 69).  Importantly, "sales below cost may constitute unfair business practices under the Unfair Competition Act even if the seller did not act with the purpose of destroying competition. *Dooley v. Crab Boat Owners Ass'n* 271 F. Supp 2d 1207 fn. 9 (N.D.Cal 2003) citing *Cal-Tech Communications, Inc.,* 20 Cal. 4th at 187.  A sale below cost is an unfair business practice if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to the same as a violation of the law or otherwise a significantly threatens or harms competition." *Id.*

SAUSA's declaration of A. Pellerano, contracts of The Law Offices of Robert Beles and The Law Offices of Phillip Tobin, filed by Defendants under seal, as to the discounts given to SAUSA customers are referred to by Momento as evidence of such below cost pricing.  No applicable authority demands anything more at the pleading stage.  Further, if it is possible to "hypothesize facts, consistent with the complaint that would make out a claim" a motion to dismiss is improper.  *Hearn v. R.J. Reynolds Tobacco Co.* 279 F. Supp. 2d 1096, 1101(D AZ 2003).   Here, it is entirely plausible based on Plaintiff's own experience in the industry for the past 14 years that a company the size of SAUSA could incur costs in the ranges it proposes. Moreover, Plaintiff states that on at least one occasion SAUSA sold advertisements below its costs.  (FAC ¶ 68)  (See Decl. of Teresita Nodarse filed under seal, Exhibits A and B – Dkt. #51)  Further, Defendants cite to no cases in which a Plaintiff must plead everything that is required to be pled under the Sherman Act for a California state below cost claim.

The court must construe the complaint in the light most favorable to the Plaintiff and accept well plead factual allegations as true.  *Iqbal,* 128 S. Ct. 1937*; see also Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).

**C. MOMENTO HAS MET ITS PLEADING BURDEN FOR SECRET/UNEARNED REBATE/ DISCOUNT ALLEGATIONS CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17045 AND 17200**

Cal Bus. & Prof. Code §17045 provides: "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." Further, the prohibiting secret payment of unearned discounts to the injury of competitor, must be liberally construed to serve its purposes. *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc*. 20 Cal.Rptr.2d 62, 16 Cal.App.4th 202 (App. 4 Dist. 1993),

"Section 17045 seeks to foster 'fair and honest competition' (§ 17001) by prohibiting certain 'dishonest, deceptive ... and discriminatory practices' ( *ibid*.), including the secret allowance of an unearned discount where such allowance injures a competitor and tends to destroy competition." *ABC Internet Traders, Inc. v. Matsushita Electric Corp*. 14 Cal.4th 1247, 1256(1997). For example, "where one competitor is given a major pricing advantage over another competitor, such pricing discrimination has an inherent tendency to destroy competition." *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.* 16 Cal.App.4th 202, 213-214, (1993). Violation requires proof that payments were, in fact, secret and discriminated among customers of the entity granting the rebates. *Harris v. Capitol Records etc. Corp.* 64 Cal.2d 454, 463(1966); see *Chicago Title Ins. Co. v. Great Western Financial Corp*. 69 Cal.2d 305, 323(1968) [complaint must allege that prices differ from customer to customer].

Plaintiff's allegations, which focus on the industry-specific utilization of price lists, include the one element that the California Supreme Court has found critical to an allegation of a violation of Cal. Bus. & Prof. Code § 17045: that the prices charged by the defendant(s), in this particular case for their advertising space, "differ from customer to customer", as opposed to a situation where "the same offer was made to any person who had made a contract with respondent" *Chicago Title Ins. Co. v. Great Western Fin. Corp.* 69 Cal. 2d 305, 323 (1968), citing *Federal Automotive Services v. Lane Buick Co.* 204 Cal. App. 2d 689, 694 (1962); *Fisherman's Wharf Bay Cruise Corp. v. San Francisco Superior Court et al* 114 Cal. App. 4th 309, 331 (2003).

Momento clearly alleges the understandable injury to it as a competitor without parent-chain funding of revenue losses resulting from selective unearned secret discounting, and the tendency of that practice to destroy long term competition.  [FAC ¶ 74 & 75]  The situation specific allegation states that Defendants gave discounts in amounts and on bases not contemplated on SAUSA's published price lists, and on a secret and selective basis, to only those advertisers whose business was perceived to be key to the continuing competitive viability of Plaintiff Momento. [FAC ¶ 75]  Accordingly, selective "unpublished" deviation from the published rate determinants that is aimed at potential customers of their principal competitor, and thus at the existence of meaningful competition in general, is at least inferentially secret, unearned and anticompetitive.

Further, the "commercial bribery" prohibited by §17045 has a significant anticompetitive impact.  Secret, unearned rebates or discounts by a provider of Spanish yellow pages advertising enable a well financed competitor to "cherry pick" key customers of its targeted competitor with terms that cannot be timely or effectively matched, because those terms are both unknown and contrary to any publicly acknowledged discounting system.  Such secret bribery means real competition on the merits is foreclosed with respect to the chosen customers, and that the resulting sealing of significant players from the competitive process will threaten the long-term viability of that process and will and has caused Momento significant injury and threatens imminent closure.  Accordingly, Momento has adequately pled a claim for Cal. Bus. & Prof. Code §17045.

### D. MOMENTO HAS STATED A CLAIM FOR ATTEMPTED MONOPOLY

Plaintiff Momento has clearly alleged all that is necessary for an attempted monopoly claim in its FAC.  A plaintiff claiming attempted monopolization must allege "(1) that [the defendant] engaged in predatory or anticompetitive conduct with 2) a specific intent to monopolize and 3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, U.S. 447, 456 (1993).  As demonstrated below, Momento has sufficiently pled the necessary allegations for attempted monopoly claim.

-6-

In meeting it's pleading requirement, the plaintiff must plead it's claim **but it need not plead its evidence**. *Tele Atlas N.V. v. NAVTEQ Corp*. 397 F. Supp. 2d 1184 (N.D. Cal. 2005) (sustaining complaint of exclusive dealing against plaintiff's rival even though complaint did not name the firms with whom exclusive dealing was allegedly imposed.)   Further, in alleging attempted monopoly, there is a low threshold of sufficiency that the complaint must meet to survive a motion to dismiss because antitrust cases are fact-intensive and discovery is needed. *Covad Communications Co. v. BellSouth Corp*. 299 F3d 1272, 1279 (11th Cir. 2002).  Additionally, courts strongly disfavor dismissals for failure to state a claim in antitrust cases. *Gilligan v. Jamco Dev Corp*. 108 F.3d 246, 249 (9th Cir. 1997).

### 1.   Plaintiff has Sufficiently Plead that Defendant Engaged in Anticompetitive Conduct

Defendants attempt to box in plaintiff's FAC to only allege predatory pricing as the only basis for anti-competitive violations under federal law.  However as demonstrated below, Plaintiff has alleged four separate bases as its anticompetitive conduct which each alone have the capability of putting Momento out of business but when combined have a disastrous effect of swiftly removing SAUSA's sole competitor in the Bay Area market.  In their 12(b)(6) motion, Defendants have failed to address these separate bases.

"Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth* 515 F.3d 883, 894 (9th Cir. 2008) citing  *Aspen Skiing Co. v. Aspen Highlands Skiing Corp*., 472 U.S. 585, 605 n. 32, (1985).  Moreover, competition consists of rivalry among competitors. *Hasbrouck v. Texaco, Inc*. 842 F2d 1034 1040 (9th Cir. 1987), aff'd, 496 U.S. 543 (1990).  Further, *__any conduct that eliminates rivals reduces competition__*.  *Rebel Oil Co., Inc. v. Atlantic Richfield Co.* 51 F3d. 142, 1433 (9th Cir. 1995)

Here, Plaintiff Momento plead the following in support of its claim of Defendant's anti-competitive conduct in paragraphs 81, 6, 9-13, 30-31, and 36.  Accordingly, Momento sufficiently alleges that SAUSA has engaged in the following anticompetitive conduct that has impaired the opportunities of Momento and does not further competition: (1) SAUSA's intentional copying of Momento's copyrighted advertisements and selling the infringing advertisements to Momento's own customers [FAC ¶ 36] (2) SAUSA selling advertisements at below cost to Momento's competition [FAC ¶ 6]  (3) SAUSA's false and misleading advertising [FAC ¶ 13]  (4)  SAUSA's offering and giving of

secret unearned discounts to Momento's key advertisers.[FAC ¶ 74 & 75] (5) free advertisements to key Momento advertisers. [FAC ¶ 36] Plaintiff has clearly plead anticompetitive conduct in at a minimum any one of the above mentioned reasons let alone any crippling effect of the anticompetitive conduct of all alleged factros taken as a whole.

### a.   SAUSA Has Engaged in Predatory Pricing which is Anticompetitive Conduct

Momento has adequately pled predatory pricing as anticompetitive conduct as well.  Under federal law, a plaintiff seeking to establish predatory pricing must show 1) the prices complained of are below an appropriate measure of its rival's costs and 2) there is a dangerous probability, of recouping its investment in below-cost price.  *Brooke Group Ltd. V. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 224 (1993).  Further, so long as prices are above predatory levels, they do not threaten competition. *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 340(1990).

1. **Below Cost**

"Predatory pricing may be established were the defendant has priced below its average total cost and there is evidence that its motive was predatory." *D.E. Rogers Associates, Inc. v. Gardner-Denver Co.*, 718 F 2d 1431, 1436 (6th Cir. 1983).  Further, the Court has stated that "[i]n *the single product* predatory pricing cases, the appropriate measure of incremental costs is an open question in this circuit." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 909-910 (9th Cir. 2008)

Taking what Momento pleads as true, that SAUSA's costs were at least $1275.00 per page of advertising (FAC ¶ 67) and that SAUSA has sold or offered for sale on more than one occasion a full page of advertising for a negligible amount and at substantially below cost, Plaintiff has met the pleading requirements for the below cost prong of predatory pricing.  As mentioned previously, the Court is directed to Defendant's own declarations filed under seal in which the Defendant informed the Court of their prices and the discounts they have given to customers that were also customers of Plaintiff. (See Dkt. #51)

2. **Dangerous Probability of Recoupment**

Determining whether recoupment of predatory losses is likely requires an estimate of the cost of the alleged predation and a close analysis of both the scheme alleged by the plaintiff and the structure and condition of the relevant market.  *Brooke Group, Ltd. V. Brown & Williamson Tobacco Corp*. 509

U.S., 209.  Further, "the anticipated benefits of defendant's price depend on its tendency to discipline or eliminate competition and thereby enhance the firm's long –term ability to reap the benefits of monopoly power. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1035-1036.   "Factors relevant to determining dangerous probability include but are not limited to, a defendant's market share, whether defendant is a multi-market firm, the number and strength of other competitors, market trends, and entry barriers." *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc.,* 63 F3d 1540 (9th Cir. 1995) Further, "[w]here predatory pricing is alleged, the defendants financial strengths and ability to absorb losses are also relevant." Id. citing *Brooke Group*, 509 U.S. at 209, 225; *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 119 n. 15 (1986).  The Court also requires an "understanding of the extent and duration of the alleged predation, the relative financial strength of the predator and its intended victim, and their respective incentives and will."  *Brook Group*, 509 US 209, 225 citing 3 Areeda & Turner ¶ 711b. "The inquiry is whether, given the aggregate losses caused by the below-cost pricing, the intended target would likely succumb." *Id.*

Here, SAUSA is alleged to have a large and sizable portion of the Spanish yellow page market in the Bay Area and its share grows in each successive directory. [FAC ¶ 6 &35]  Compared to SAUSA, Momento is alleged to be a substantially smaller company and a family run operation that cannot sustain SAUSA's anticompetitive conduct.  [FAC ¶ 3]   SAUSA is alleged to have the financial backing of a known Mexican monopoly and Carlos Slim, one of the richest people in the world. [FAC ¶ 4, 9, 28& 29] SAUSA is the self-proclaimed largest Spanish yellow pages company in the United States 90 different directories that correspond with 90 different cities in 30 states.  [FAC ¶ 28]

It is alleged that Here, SAUSA and Momento are the only Spanish directories in the bay area and if SAUSA continues its anticompetitive conduct Momento will be forced out of business. [FAC ¶ 38] SAUSA would then control 100% of the market and would be able to charge an exorbitant rate for advertisements and recoup any losses it sustained as a result of its predatory pricing scheme. Therefore, Momento has adequately pled dangerous probability of recoupment.

**b.  SAUSA Has Offered and Given Secret Discounts to Momento's Key Advertisers which is Anticompetitive Conduct**

SAUSA has extended secret and unearned discounts to Momento's key advertisers in violation of Cal. Bus. & Prof. Code §17045 (see above).  SAUSA's conduct is anticompetitive as "such pricing

discrimination has an inherent tendency to destroy competition." *Diesel Electric Sales & Service, Inc. v. March Marine San Diego, Inc.* 16 Cal. App. 4th 202, 213-214 (1993).   Pricing discrimination and the offering of unearned discounts to Momento's key advertisers, has a significant and grave impact on competition in the Spanish yellow page market as it means that real competition in regards to the selected customers is foreclosed as the terms of the discounts are unknown to Momento.  Therefore, theses selective discounts have the effect of severely injuring Momento threaten its very existence.

### c.  SAUSA Has Engaged in False and Misleading Advertising which is Anticompetitive Conduct

Fraudulent misrepresentations to advertisers may be considered anticompetitive conduct. *Caribbean Broadcasting System, Lts. V. Cable & Wireless P.L.C.,* 148 F3d 1080,(D.C. Cir. 1998) Further, courts have also held that false advertising supports a Section 2 attempt claim.  *National Ass'n of Pharmaceutical Mfs., Inc.v. Ayerst Laboratories, Div. of and American Hme Products Corp*., 850 F2d 904 (2d Cir 1988).  The presumption that false and misleading statements have a de minimums effect on competition is overcome by cumulative proof that representations were "1) clearly false, 2) clearly material, 3) clearly likely to induce reasonable reliance, 4) made to buyers without knowledge of the subject matter, 5) continued for prolonged periods, and 6) not readily susceptible of neutralization or other offset by rivals."  *American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal*, 108 F3d 1147, 1152 (9th Cir. 1997)

Here, the Court has previously found that Momento has a strong likelihood of success on its false advertisement claims as SAUSA admitted that there was no dispute as to who was the first and only Spanish Yellow pages in Northern California.  Momento has pled that SAUSA has falsely advertised itself as "first and only Spanish directory delivered to consumers in Northern California." (FAC ¶13)  Further, Momento has plead that this statement is false and likely to mislead the public. (FAC ¶56)  These false and misleading statements have caused Momento to lose customers (FAC ¶ 12). The false and misleading statements prevent Momento from effectively competing for business in the Spanish market in Northern and Central California. (FAC ¶ 36).  Moreover, it is alleged that SAUSA has made such clearly false statements in order to falsely gain credibility with advertisers and consumers and to gain a foothold in the market and has done so since coming on the market. (FAC ¶ 36).  This anticompetitive behavior will force Momento out of business (FAC ¶ 38).  If Momento is forced out of business then the only reaming Spanish Directory will be SAUSA in turn resulting in no other

competition in the Bay Area (FAC ¶ 30-31).   Moreover, evidence filed in support of Plaintiff's Motion for Preliminary Injunction showed that SAUSA misrepresented to its advertisers as to when its Oakland/Alameda would be published and was late by more than 8 months in a 12 month annual publication.  (See Dkt. #59, Exh. 5, page 10)

### d.   SAUSA Has Engaged in Below Cost Pricing which is Anticompetitive Conduct

Below cost pricing in violation of Cal. Bus. & Prof. Code §17043 may be considered anticompetitive conduct as it tends to destroy competition.  Here Momento has been harmed and will be forced out of business if SAUSA continues to offer prices below its costs. (FAC ¶ 69) Momento has adequately pled below cost pricing under §17043 (see above), therefore, it has met its pleading burden as to anticompetitive conduct without inquiry under federal law.

### e.   SAUSA Has Infringed on Momento's Copyrights which is Anticompetitive Conduct

As mentioned above, any conduct that "impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way" may be considered anticompetitive conduct for purposes of Section 2 of the Sherman Act. *Cascade Health Solutions v. PeaceHealth* 515 F.3d 883, 894 (9th Cir. 2008) citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 n. 32 (1985).  Further, anticompetitive conduct *can come in too many different forms, and is too dependent upon context, for any court or commentator ever to have enumerated all the varieties*. *Caribbean Broadcasting System, Ltd. V. Cable & Wireless P.L.C.,* 148 F.3d 1080 (D.C. Cir. 1998).  The only form of anticompetitive conduct that is punishable is not just predatory pricing.

### 2.   Momento has Sufficiently Pled a Dangerous Probability of SAUSA achieving Monopoly Power

Whether, an alleged predator has a dangerous probability of obtaining monopoly power is a "particularly fact intensive inquiry." *U.S. v. Microsoft*, 253 F.3d 34, 80.  Courts typically should not resolve this question at the pleading stage. *Broadcom Corporation v. Qualicomm Inc,* 501 F.3d 297,318 (3d Cir. 2007) citing *Brader v. Allegheny Gen. Hosp.,* 64 F. 3d 869, 877 (3d Cir. 1995).  A dangerous probability of successful monopolization is a fact-sensitive inquiry, in which market share is simply one factor.  *See Barr Laboratories, Inc. v. Abbot Laboratories*, 978 F.2d 98, 112 (3d Cir. 1992).  Further, because the elements of attempted monopoly are interdependent, proof of one of the elements of attempted monopolization may provide circumstantial evidence or permissible inferences of the other

elements. *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.* 676 F.2d 1291, 1308 (9th Cir. 1982).

In stages of litigation *beyond pleading*, the Court has stated in *Hallmark Industry v Reynolds Metals Co.*, 489 F2d 8 (Cal. 1973), cert den 417 US 932, 41 L Ed 2d 235, 94 S Ct 2643, reh den 419 US 1028, 42 L Ed 2d 304, 95 S Ct 509, that a dangerous probability may be shown through proof of specific intent to set prices or exclude competition in a portion of the market without legitimate business purpose.  Further, no particular level of market power or dangerous probability of success must be alleged or proved in support of Sherman Act claim for conspiracy to monopolize market when specific intent to monopolize is otherwise apparent from the character of the actions taken. Sherman Act, § 2, as amended, 15 U.S.C.A. § 2.  *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003).   A dangerous probability of success may be inferred from direct proof of market power or from proof of specific intent and anticompetitive conduct. *California Computer Products, Inc. v. IBM Corp.*, 613 F.2d 727, 737 (9th Cir. 1979).  Additionally, as mentioned above, "the extent and duration of the alleged predation, the relative financial strength of the predator and its intended victim, and their respective incentives and will" are all relative to the determination of dangerous probability of achieving monopoly power.  *Brook Group*, 509 US 209, 225 citing 3 Areeda & Turner ¶ 711b.

Here Plaintiff pleads the following in regards to Defendants' dangerous probability to achieve monopoly power in paragraphs 83, 79, 4, 28-32, 36, and 9-12.   Momento has clearly alleged the financial position of SAUSA and its ability to recoup any losses from its below-cost and predatory pricing conduct. (FAC ¶ 10, 11).  Further, Momento has alleged that SAUSA has an illegitimate purpose of engaging in the anticompetitive behavior and with the specific intent of harming Momento, driving Momento out of the market, and securing a monopoly position in the Bay Area market.  [FAC¶ 9]  SAUSA's specific intent to attempt to monopolize the market is demonstrated in SAUSA's initial attempt to purchase Momento.  [FAC ¶ 83]  Momento also alleges that after attempting to purchase Momento, SAUSA engaged in a campaign to force Momento out of the market by lure all of Momento's customers away from Momento with short term below cost pricing and selling Momento's exact same advertisements at prices well below Momento's.  [FAC ¶ 30, 10, 11]

All of Momento's allegations are to be taken as true and no such evidentiary inquiry shall be made at this pleading stage.

-12-

### 3. Momento has adequately plead Causal Antitrust Injury

Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489(1977).  Another form of antitrust injury is coercive activity that prevents it's victims from making free choices between market alternatives.  *Amarel v. Connell*, 102 F3d 1494, 1509 (9th Cir. 1996); accord *Glen Holly Entm't, Inc. v. Tektronix, Inc*. 352 F3d 367, 374 (9th Cir. 2003).  Additionally, decreased competition is the type of harm targeted by the antitrust laws.   *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp*., 995 F.2d 425 (3d Cir. 1993). Further, predatory pricing  "is a practice that harms both competitors and competition. In contrast to price cutting aimed simply at increasing market share, predatory pricing has as its aim the elimination of competition. Predatory pricing is thus a practice 'inimical to the purposes of [the antitrust] laws,' *Brunswick*, 429 U.S., at 488, 97 S.Ct., at 697, and one capable of inflicting antitrust injury." *Cargill, Inc. v. Monfort of Colorado, Inc*. 479 U.S. 104, 117-118 (1986)

Momento has alleged the following paragraphs in regards to it antitrust injury, paragraphs, 83, 10, and 36-38.  Here, Momento alleges that it has lost profits and will be forced out of business based on its reduced ability to compete against SAUSA. [FAC ¶ 16]  These lost profits and eventual demise are not the result of increased competition in the market but at the direct result of SAUSA's anticompetitive conduct of below cost and predatory pricing, secret unearned discounts, false advertising and copyright infringement. [FAC¶16 &36]

Accordingly, the Defendants' Motion to Dismiss Momento's Third, Fourth, and Fifth Claims for Relief is DENIED.

SO ORDERED.

Dated: 9/16/09

Hon. Saundra Brown Armstrong
United States District Judge

-13-